**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SIMPLISAFE, INC.,<br><br>　　　　　Defendant. | Civil Action No. 1:23-cv-10352-RGS (Lead Case)<br><br>**JURY TRIAL DEMANDED** |

**FIRST CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IOT INNOVATIONS LLC ("IoT Innovations" or "Plaintiff") files this First Consolidated complaint against SIMPLISAFE, INC. ("SimpliSafe" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop SimpliSafe's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are attached hereto as **Exhibits A-Q,** respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 7,209,876<br>(the "'876 patent") | System And Method For Automated Answering Of Natural Language Questions And Queries |
| B. | 7,263,102<br>(the "'102 patent") | Multi-Path Gateway Communications Device |
| C. | 7,526,762<br>(the "'762 patent") | Network With Mobile Terminals As Browsers Having Wireless Access To The Internet And Method For Using Same |
| D. | 7,983,282<br>(the "'282 patent") | Edge Side Assembler |
| E. | 8,972,576<br>(the "'576 patent") | Establishing A Home Relationship Between A Wireless Device And A Server In A Wireless Network |
| F. | 9,008,055<br>(the "'055 patent") | Automatic Remote Services Provided By A Home Relationship Between A Device And A Server |

|     | U.S. Patent No. | Title |
| --- | --- | --- |
| G. | 6,801,933 (the "'933 patent") | System And Method For Proactive Caching Employing Graphical Usage Description |
| H. | 7,379,464 (the "'464 patent") | Personal Digital Gateway |
| I. | 7,756,073 (the "'073 patent") | Method For Updating A Routing Entry |
| J. | 7,394,798 (the "'798 patent") | Push-To Talk Over Ad-Hoc Networks |
| K. | 7,593,428 (the "'428 patent") | Apparatus, And Associated Method, For Forming, And Operating Upon, Multiple-Checksum-Protected Data Packet |
| L. | 7,304,570 (the "'570 patent") | Methods, Systems, And Computer Program Products For Providing Context-Based, Hierarchical Security For A Mobile Device |
| M. | 6,920,486 (the "'486 patent") | Method And Apparatus For Enabling Synchronizing Data In Different Devices Having Different Capabilities And Unmatched Data Fields |
| N. | 7,567,580 (the "'580 patent") | Edge Side Assembler |
| O. | RE 44,742 (the "'742 patent") | Dynamic Message Templates And Messaging Macros |
| P. | 8,401,571 (the "'571 patent") | Mobile Electronic System |
| Q. | 8,175,037 (the "'037 patent") | Method For Updating A Routing Entry |

2.    IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3.    IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.    SimpliSafe is a corporation organized under the laws of the State of Delaware since August 11, 2006.

5.    SimpliSafe has its principal place of business located at 100 Summer Street Suite, 300, Boston, Massachusetts 02110.

6.    SimpliSafe may be served through its registered agent for service, Christian Cerda,

also located at 100 Summer Street Suite, 300, Boston, Massachusetts 02110.

## JURISDICTION AND VENUE

7.      IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

8.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.      Venue is proper against SimpliSafe in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

10.     SimpliSafe is subject to this Court's specific and general personal jurisdiction under due process because of SimpliSafe's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state and in this District.

11.     Specifically, SimpliSafe intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

12.     SimpliSafe maintains regular and established places of business in this District.

13.     SimpliSafe offers products and services and conducts business in this District as

described below.

14.     SimpliSafe ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

15.     SimpliSafe commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

### THE ACCUSED PRODUCTS

16.     IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

17.     Based upon public information, SimpliSafe owns, operates, advertises, and/or controls the website and domain simplisafe.com, through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services.  *See* **Exhibit R.**

18.     SimpliSafe uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems, including but not limited those marketed as SimpliSafe Systems, which include, at least, the Inside SimpliSafe Alarm Systems, the SimpliSafe Base Station, the SimpliSafe Keypad, SimpliSafe's Mobile App (including the SimpliSafe Account), SimpliSafe paid subscription services like (*e.g.*, the SimpliCam subscription), SimpliSafe Server(s), and a variety of wireless accessories and sensors, including, but not limited to SimpliSafe Cameras and Doorbells (*e.g.*, SimpliCam, SimpliSafe's Indoor Cameras and Outdoor Cameras, and Video Doorbell Pro, all of which are "Cameras and Doorbells"), SimpliSafe Sensors (*e.g.*, Motion Sensors, Temperature Sensors, Entry Sensors, and CO Detectors, all of

which are "Sensors"), and SimpliSafe systems' encryption technologies and its cellular and Wi-Fi capabilities, and their associated hardware and software and functionalities (the "Accused Products"). *See* **Exhibit R, Exhibit S, Exhibit T, Exhibit U, Exhibit V, Exhibit W, and Exhibit X**.

19.     SimpliSafe also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for home security and control. *See* **Exhibit T, Exhibit U,** and **Exhibit V**.

20.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,209,876

21.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22.     The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007 after full and fair examination of Application No. 10/293,743 which was filed on November 13, 2002. *See* **Ex. A**.

23.     IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

24.     The claims of the '876 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

25.     The written description of the '876 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26.     SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '876 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '876 patent.

27.     As an example, SimpliSafe, using the Accused Products, including but not limited to SimpliSafe Home Security with Voice Control, incorporates voice commands, performs a method for producing answers to a question or query issued to an information repository containing natural language data, executable in a computer system, comprising the steps of: (a)  receiving a search question or query containing at least one variable expression that is representative of desired answer data that is to be searched for in said information repository; (b) initiating a search of said information repository for information containing terms present in said search question or query and receiving a first data set comprising the information resulting from said search question or query; (c) searching said first data set for answer phrases present in syntactically similar form to said search question or query and containing answer data which may replace said variable expression to provide an answer to said search question or query, and retrieving answer phrases resulting from such search; and (d) modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query.



Available at https://support.simplisafe.com/articles/using-your-system/does-my-simplisafe-system-integrate-with-other-smart-home-devices/634492857c2ab96af9f1d6f6

28.     More specifically, and as just one example of infringement, SimpliSafe Home Security with Voice Control (a) receives a search question or query containing at least one variable expression that is representative of desired answer data [*e.g.*, "ask SimpliSafe if my home is secure" or "is the security system armed"] that is to be searched for in an information repository [*e.g.*, the information backend/storage/database used by SimpliSafe]; (b) initiating a search of said information repository for information [*e.g.*, processing the statement and tokenizing it into words] containing terms present in said search question or query and receiving a first data set [*e.g.*, "Application Data"] comprising the information resulting from said search question or query [*e.g.*, the serial number and state of the alarm system]; (c) searching said first data set for answer phrases present in syntactically similar form to said search question or query [*e.g.*, SimpliSafe searches for an answer phrase of "armed" state] and containing answer data which may replace said variable expression to provide an answer to said search question or query and retrieving answer phrases

resulting from such search [*e.g.,* SimpliSafe retrieves answer phrase of "armed" state]; and (d) modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query [*e.g.*, "SimpliSafe is armed" or "SimpliSafe is disarmed"].

"Hey Google, is the security system armed?"

Simplisafe is disarmed

Available at https://www.googlenestcommunity.com/t5/Home-Automation/Google-Assistant-loops-when-arming-Simplisafe-to-HOME/m-p/232945

29.     Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed one or more claims of the '876 patent by inducing others to directly infringe said claims.  SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '876 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '876 patent, including, for example, claim 1.  Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.    SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '876 patent and with the knowledge that the induced acts constitute infringement.  SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '876 patent.  SimpliSafe's inducement is ongoing.  *See* **Ex.**

**S—Ex. V**.

30.     SimpliSafe has also indirectly infringed by contributing to the infringement of the '876 patent.  SimpliSafe has contributed to the direct infringement of the '876 patent by their personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '876 patent, including, for example, claim 1.   The special features constitute a material part of the invention of one or more of the claims of the '876 patent and are not staple articles of commerce suitable for substantial non-infringing use.  SimpliSafe's contributory infringement is ongoing.  *See* **Ex. S—Ex. V**.

31.     SimpliSafe had knowledge of the '876 patent at least as of the date when they were notified of the filing of this action.

32.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

33.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

34.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '876 patent.

35.     IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

36.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '876 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,263,102

37.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

38.     The USPTO duly issued U.S. Patent No. 7,263,102 (hereinafter, the "'102 patent") on August 28, 2007 after full and fair examination of Application No. 10/306,848 which was filed on November 27, 2002.  *See* **Ex. B**.  A Certificate of Correction was issued January 1, 2013.  *See id.* at p. 18.

39.      IoT Innovations owns all substantial rights, interest, and title in and to the '102 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

40.      The claims of the '102 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security communications devices and networks using a personal digital gateway to enable multiple communications devices to share, transfer, and/or access standardized information and customize the presentation of such information.

41.     The written description of the '102 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

42.     SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '102 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 14 of the '102 patent.

43.     As an example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe Base Station,  provides a personal digital gateway, comprising: (a) at least one input/output processor to input and to output data with the personal digital gateway; (b) at least one communications interface for communicating data with a (c) communications device selected from a plurality of communications devices, comprising at least one of a wireless communications device, a mobile phone, a wireless phone, a WAP phone, an IP phone, a satellite phone, a computer, a modem, a pager, a digital music device, a digital recording device, a personal digital assistant, an interactive television, a digital signal processor, and a Global Positioning System device; (d) a memory device for storing the data; (e) a rule-based application dataserver providing a rule-based engine to categorize the data as at least one of data associated with an access agent, data associated with a configuration agent, data associated with a security agent, and data associated with a management agent; and (f) a processor communicating with the memory device, the processor (g) selecting data stored in the memory device based upon information contained within a rule-based profile.



Available at https://simplisafe.com/base-station

44.     More specifically, and as just one example of infringement, the SimpliSafe Base Station includes (a) an input/output processor [*e.g.*, a Wi-Fi module, a Bluetooth module, a cellular module, etc.] to input and output data, (b) a communications interface [*e.g.*, a radio transceiver like an ESP32, TICC1121, etc.] for communicating data with a (c) communications device such as at least one of a wireless communications device, a mobile phone, a wireless phone, a WAP phone, an IP phone, a satellite phone, a computer, a modem, a pager, a digital music device, a digital recording device, a personal digital assistant, an interactive television, a digital signal processor, and a Global Positioning System device [*e.g.,* SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, phone/tablet configured with the SimpliSafe app, a GPS chipset, etc.], (d) a memory device for storing data [*e.g.,* the Base Station has a flash memory like the Winbond 25q64jvsiq], (e) a rule-based engine to categorize data associated with one of an access agent, data associated with a configuration agent, data associated with a security agent, and data associated with a management agent [*e.g.*, data associated with, among others, SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, and/or SimpliSafe Keypads], and (f) a processor [*e.g,* microcontroller like the PIC32MX170F512L] that (g) selects data stored in the memory device based upon

information contained within a rule-based profile [*e.g.*, data associated with, among others, SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, and/or SimpliSafe Keypad(s) that indicates a state of the system and/or action to take].



And finally, the radio board, which contains an ESP32 that handles Wi-Fi and Bluetooth Low Energy (BLE), and a general-purpose Sub 1GHz radio IC (Texas Instruments CC1121) for communicating with sensors:



**Base Station**

Below is the base station mainboard with a PIC Microcontroller (<u>PIC32MX170F512L</u>[11]), flash memory (Winbond 25q64jvsiq), and an audio Amp IC (for the siren).



Available at https://medium.com/tenable-techblog/inside-simplisafe-alarm-system-291a8c3e4d89

45.     Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed one or more claims of the '102 patent by inducing others to directly infringe said claims. SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '102 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '102 patent, including, for example, claim 14. Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused

Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.   SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '102 patent and with the knowledge that the induced acts constitute infringement.  SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '102 patent.  SimpliSafe's inducement is ongoing.  *See* **Ex. S—Ex. V**.

46.     SimpliSafe has also indirectly infringed by contributing to the infringement of the '102 patent.  SimpliSafe has contributed to the direct infringement of the '102 patent by their personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '102 patent, including, for example, claim 14.  The special features constitute a material part of the invention of one or more of the claims of the '102 patent and are not staple articles of commerce suitable for substantial non-infringing use.  SimpliSafe's contributory infringement is ongoing.  *See* **Ex. S—Ex. V**.

47.     SimpliSafe had knowledge of the '102 patent at least as of the date when they were notified of the filing of this action.

48.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

49.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

50.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '102 patent.

51.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

52.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '102 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,526,762**

53.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

54.    The USPTO duly issued U.S. Patent No. 7,526,762 (hereinafter, the "'762 patent") on April 28, 2009 after full and fair examination of Application No. 09/659,416 which was filed on September 11, 2000.  *See* **Ex. C**.

55.    IoT Innovations owns all substantial rights, interest, and title in and to the '762 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

56.    The claims of the '762 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, distribution, and security of software updates on terminal servers using configuration servers and messaging to control upgrade delivery.

57.     The written description of the '762 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

58.     SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '762 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '762 patent.

59.     As an example, SimpliSafe, using the Accused Products, including but not limited to by upgrading firmware/software in the SimpliSafe Base Station and Keypad(s), performs a method comprising: (a) receiving a configuration upgrade message at a configuration server from a source of an at least partial software upgrade; (b) saving upgrade information in a database associated with the configuration server; (c) identifying a plurality of users requiring at least partial software upgrade; (d) thereafter providing the at least partial software upgrade to respective terminal servers associated with the plurality of users identified to require the at least partial software upgrade for subsequent distribution by the terminal servers to respective terminals of users identified to require the at least partial software upgrade; (e) identifying any terminal servers, following the provision of the at least partial software upgrade to which the at least partial software upgrade has not yet

been transferred; and (f) determining, in response to activation of a terminal associated with a terminal server, if the terminal server has been identified as a terminal server to which the at least partial software upgrade has not yet been transferred and, if so, providing the at least partial software upgrade to the terminal server.

60.     More specifically, and as just one example of infringement, software/firmware is upgraded in the SimpliSafe Base Station and Keypads by (a) receiving a configuration upgrade message at a configuration server from a source of an at least partial software upgrade [*e.g.*, when SimpliSafe has firmware/software upgrade, a configuration upgrade message, for, as an example, system firmware 2.6 (February 2022), is received from a SimpliSafe server like wfu3.simplisafe.com]; (b) saving upgrade information in a database associated with the configuration server [*e.g.*, SimpliSafe stores their latest firmware/software update information in a database associates with configuration server]; (c) identifying a plurality of users requiring at least partial software upgrade [*e.g.*, SimpliSafe displays the gear symbol on the Keypad or sends a notification to the user in the SimpliSafe app]; (d) thereafter providing the at least partial software upgrade to respective terminal servers associated with the plurality of users identified to require the at least partial software upgrade for subsequent distribution by the terminal servers to respective terminals of users identified to require the at least partial software upgrade [*e.g.*, the system update is provided through, for example, wfu3.simplisafe.com]; (e) identifying any terminal servers, following the provision of the at least partial software upgrade to which the at least partial software upgrade has not yet been transferred [*e.g.*, the encrypted application data will contain identifying information for the Base Station or SimpliSafe Keypad, such as identities associated with the Base Station/Keypad version number and SimpliSafe identifies those that have not been upgraded]; and (f) determining, in response to activation of a terminal associated with a

terminal server, if the terminal server has been identified as a terminal server to which the at least partial software upgrade has not yet been transferred and, if so, providing the at least partial software upgrade to the terminal server [*e.g.*, SimpliSafe checks for system updates and displays the gear symbol on the Keypad or sends a notification to the user in the SimpliSafe app and also provides the update and tracks how much of the update is installed].



Available at https://support.simplisafe.com/articles/using-your-system/updating-your-simplisafe-system/63447a258e3e4c348d43ebe3



Available at https://support.simplisafe.com/articles/using-your-system/updating-your-simplisafe-

system/63447a258e3e4c348d43ebe3



Available at https://support.simplisafe.com/articles/using-your-system/updating-your-simplisafe-system/63447a258e3e4c348d43ebe3



Available at https://support.simplisafe.com/conversations/gen-3-simplisafe/firmware-update-on-12222/638b3fb7b5af727572b01560

 

Available at https://www.androidheadlines.com/2019/12/simplisafe-review-customizeable-security-home-business-cameras-alarm-motion-sensors.html

61.     Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed one or more claims of the '762 patent by inducing others to directly infringe said claims.  SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '762 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '762 patent, including, for example, claim 1.  Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.   SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '762 patent and with the knowledge that the induced acts

constitute infringement.  SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '762 patent.  SimpliSafe's inducement is ongoing.  *See* **Ex. S—Ex. V**.

62.     SimpliSafe has also indirectly infringed by contributing to the infringement of the '762 patent.  SimpliSafe has contributed to the direct infringement of the '762 patent by their personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '762 patent, including, for example, claim 1.   The special features constitute a material part of the invention of one or more of the claims of the '762 patent and are not staple articles of commerce suitable for substantial non-infringing use.   SimpliSafe's contributory infringement is ongoing.  *See* **Ex. S—Ex. V**.

63.     SimpliSafe had knowledge of the '762 patent at least as of the date when they were notified of the filing of this action.

64.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

65.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

66.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '762 patent.

67.     IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

68.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '762 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,983,282

69.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

70.     The USPTO duly issued U.S. Patent No. 7,983,282 (hereinafter, the "'282 patent") on July 19, 2011 after full and fair examination of Application No. 12/486,008 which was filed on June.17, 2009.  *See* **Ex. D**.  A Certificate of Correction was issued July 16, 2013.  *See id.* at p. 19.

71.     IoT Innovations owns all substantial rights, interest, and title in and to the '282 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

72.     The claims of the '282 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components and functionalities hat improve upon the function, operation, and security of communications devices and networks by personalizing a user experience across devices by using a personal digital gateway to communicate data associated with a common user to a plurality

of communication devices.

73.     The written description of the '282 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

74.     SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '282 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '282 patent.

75.     As an example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe Base Station, Mobile App, Indoor Camera and Video Doorbell Pro (with Individual Camera Subscriptions and/or Interactive Monitoring), and a SimpliCam Subscription, performs a method, comprising: (a) identifying data associated with a common user of a personal digital gateway and of a plurality of communications devices; (b) receiving a selection of a communications device from the plurality of communications devices; (c) retrieving remote data from a selected communications device; and (d) forwarding the remote data to another one of the plurality of communications devices.

76.     More specifically, and as just one example of infringement, the SimpliSafe Base Station, Mobile App, Indoor Camera and Video Doorbell Pro (with Individual Camera Subscriptions and/or Interactive Monitoring), and a SimpliCam Subscription (a) identifies data associated with a common user of a personal digital gateway and of a plurality of communications devices [*e.g.*, email address, username, password, etc. associated with the user of a Base Station

and a more than one SimpliSafe SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe Keypads, mobile phone with SimpliSafe app, etc.]; (b) receives a selection of a communications device from the plurality of communications devices [*e.g.*, request to record or watch live or historical video]; (c) retrieves remote data from a selected communications device [*e.g.*, SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe Keypads, mobile phone with SimpliSafe app, etc.]; and (d) forwards the remote data to another one of the plurality of communications devices [*e.g.*, SimpliCam subscriptions provide cloud storage uploading and retrieval of video clips and remote data from, for example, SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Keypads, which can be retrieved by other communication devices, like a mobile device with the SimpliSafe app or other device configured to monitor or view such data].



Available at https://simplisafe.com/



Available at https://simplisafe.okta.com/app/simplisafe_auth0production_1/exkjy99yjjRm1SEg 4696/sso/saml



Available at https://play.google.com/store/apps/details?id=com.simplisafe.mobile



Available at https://www.safewise.com/simplisafe/simplicam-review/

## SimpliCam Subscription:

With the $4.99/month subscription plan, your camera can do some pretty cool things, the most important being recording. You know that you can live view your camera at any time, but with a subscription your camera will also record 60 second clips anytime it detects motion. If something triggers the camera it will automatically record and send you a Push Notification that something is going on. This is particularly important if the camera is set off by an intruder, so that you can capture their face to show to the police.

You'll also be able to manually record for 60 seconds through the SimpliSafe app. If you see something happening on camera (whether it be an intruder or just your dog doing something awesome) you will be able to capture that clip with the push of a button. From there, recordings are stored in SimpliSafe Cloud Storage for 30 days. You can also download and share clips across devices as you like.

This subscription is available regardless of whether or not you have a SimpliSafe security system.

Available at https://simplisafe.com/blog/simplicam-integration

# How do I download recordings from my camera?

Updated 2 months ago



Video clips from the SimpliCam Indoor Camera and the Video Doorbell Pro can be downloaded to your mobile device from the SimpliSafe app. Each camera whose clips you would like to download must have an **individual Camera Subscription, which is included with Interactive Monitoring**. If a Camera does not have a subscription there will be no clip available to download.

Available at https://support.simplisafe.com/articles/video-doorbell-pro/how-do-i-download-recordings-from-my-camera/634492d0c307775b63814d13?lang=en_US

77.      IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '282 patent.

78.      IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,972,576**

79.      IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

80.      The USPTO duly issued U.S. Patent No. 8,972,576 (hereinafter, the "'576 patent") on March 3, 2015 after full and fair examination of Application No. 10/833,381 which was filed on April 28, 2004.  *See* **Ex. E**.

81.      IoT Innovations owns all substantial rights, interest, and title in and to the '576 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

82.     The claims of the '576 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

83.     The written description of the '576 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84.     SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '576 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '576 patent.

85.     As an example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe Base Station, SimpliSafe Server, and Mobile App, performs a method for establishing a relationship between a mobile device and a server in a network, comprising; (a) detecting the presence of the mobile device; (b) in response to determining that the mobile device is unrecognized, automatically notifying a network administrator; (c) in response to receiving authorization from the network administrator to establish the relationship, requesting authorization from the mobile device to authorize the establishment of the relationship; and (d) establishing the

relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established.

86.     More specifically, and as just one example of infringement, the SimpliSafe Base Station, SimpliSafe Server, and Mobile App comprise a relationship between a mobile device and a server in a network by [*e.g.*, the Base Station and SimpliSafe server in a wireless network]; (a) that detects the presence of the mobile device [*e.g.*, a Bluetooth-enabled smartphone using the SimpliSafe App detects the presence of, for instance, the Base Station]; (b) in response to determining that the mobile device is unrecognized, automatically notifies a network administrator [*e.g.*, when a mobile device like the Base Station is unrecognized, for instance, because it is a new Base Station, the SimpliSafe app automatically notifies a network administrator with a prompt requiring a QR code and/or serial number of the Base Station]; (c) in response to receiving authorization from the network administrator to establish the relationship, requests authorization from the mobile device to authorize the establishment of the relationship [*e.g.*, the network administrator authorizes establishment of the relationship, for instance, by scanning the QR code or manually entering the Base Station serial number, establishing the relationship with the Base Station using the QR code data and/or serial number, and Wi-Fi credentials]; and (d) establishes the relationship between the mobile device and the network in response to receiving the authorization from the mobile device, such that no additional configuration is required by the mobile device to communicate over the network once the relationship has been established [*e.g.*, once the relationship is established between the Base Station and wireless network, no additional configuration is required by the mobile device to communicate over the network].



Available at https://simplisafe.com/base-station





Available at https://support.simplisafe.com/articles/base-station/base-station-gen-3-installation-guide/6344927d77e4972f8fca9f30



Available at https://support.simplisafe.com/articles/base-station/base-station-gen-3-installation-guide/6344927d77e4972f8fca9f30

- When prompted, scan the QR code on the bottom of your new Base Station or manually enter the Serial Number. To scan the QR code, you may need to provide SimpliSafe access to your camera by selecting: Always Allow, or Allow Once.

Available at https://support.simplisafe.com/articles/base-station/base-station-gen-3-installation-guide/6344927d77e4972f8fca9f30



Available at https://support.simplisafe.com/articles/base-station/base-station-gen-3-installation-guide/6344927d77e4972f8fca9f30

- Then, wait 10-15 seconds as your Base Station is recognized and then tap "Done". Do not enter your PIN yet, even if prompted to do so
- Once recognized, you'll need to teach your Base Station the credentials for your 2.4GHz wireless network at this location. Follow the instructions on the SimpliSafe app to do so.

Available at https://support.simplisafe.com/articles/base-station/base-station-gen-3-installation-guide/6344927d77e4972f8fca9f30

87.     Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed one or more claims of the '576 patent by inducing others to directly infringe said claims.  SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '576 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '576 patent, including, for example, claim 1.  Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.   SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '576 patent and with the knowledge that the induced acts constitute infringement.  SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '576 patent.  SimpliSafe's inducement is ongoing. *See* **Ex. S—Ex. V**.

88.     SimpliSafe has also indirectly infringed by contributing to the infringement of the '576 patent.  SimpliSafe has contributed to the direct infringement of the '576 patent by their personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that

infringe one or more claims of the '576 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '576 patent and are not staple articles of commerce suitable for substantial non-infringing use. SimpliSafe's contributory infringement is ongoing. *See* **Ex. S—Ex. V**.

89.     SimpliSafe had knowledge of the '576 patent at least as of the date when they were notified of the filing of this action.

90.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

91.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

92.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '576 patent.

93.     IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above. Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

94.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '576 patent. SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and

technology.   The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 9,008,055

95.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

96.     The USPTO duly issued U.S. Patent No. 9,008,055 (hereinafter, the "'055 patent") on April 14, 2015 after full and fair examination of Application No. 10/903,931 which was filed on July 29, 2004.  *See* **Ex. F**.

97.     IoT Innovations owns all substantial rights, interest, and title in and to the '055 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

98.     The claims of the '055 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security communications devices and networks by using services that are automatically employed once there is an established relationship between a device and a home network.

99.     The written description of the '055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100.     SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '055 patent by making, using, selling, offering to sell, providing, supplying, or distributing

the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '055 patent.

101.    As an example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe Base Station, SimpliSafe Server, SimpliSafe, SimpliSafe Cameras and Doorbells, and Mobile App using push services, performs a method for automatically providing remote services for a mobile device having an established relationship with a server of a home network, comprising: (a) receiving, by the server, information that was stored in the mobile device when the established relationship was established when the mobile device establishes an Internet connection through a local network that is separate and remote from the home network, wherein establishing the established relationship includes allowing the user to set preferences that identifies at least one service that is automatically performed between the mobile device and the server when a connection is made; and (b) if the mobile device is recognized through the received information, automatically activating at least one function within the server to initiate a transfer of data between the mobile device and the server through the local network.

102.    More specifically, and as just one example of infringement, the SimpliSafe Base Station, SimpliSafe Server, and SimpliSafe App, in conjunction with SimpliSafe Sensors, and SimpliSafe Cameras and Doorbells, automatically provide remote services for a mobile device having an established relationship with a server of a home network [*e.g.*, the Base Station stores the domain name "bb2.simplisafe.com," which is an example of an established relationship with a server], by (a) receiving, by the server, information that was stored in the mobile device [*e.g.*, encrypted Application Data] when the established relationship was established [*e.g.*, between the SimpliSafe Base Station and a Wi-Fi network using a TLS session for the domain name]  when the mobile device establishes an Internet connection through a local network that is separate and

remote from the home network [*e.g.*, the Base Station establishes an internet connection through the Wi-Fi network, which is separate from the home network], wherein establishing the established relationship includes allowing the user to set preferences that identifies at least one service that is automatically performed between the mobile device and the server when a connection is made [*e.g.*, establishing the Wi-Fi connection allows users to receive automatic notifications that service is connected, for instance, like "SimpliSafe WiFi Restored"]; and (b) if the mobile device is recognized through the received information, automatically activating at least one function within the server to initiate a transfer of data between the mobile device and the server through the local network [*e.g.*, the received information includes identity information for the SimpliSafe Base Station, including, for instance, serial number, and after the Base Station is recognized, at least one function within the server is activated to initiate transfer of data through the local Wi-Fi network].

103.    Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed one or more claims of the '055 patent by inducing others to directly infringe said claims.  SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '055 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '055 patent, including, for example, claim 1.  Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in

an infringing manner.   SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '055 patent and with the knowledge that the induced acts constitute infringement.   SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '055 patent.   SimpliSafe's inducement is ongoing.   *See* **Ex. S—Ex. V**.

104.     SimpliSafe has also indirectly infringed by contributing to the infringement of the '055 patent.   SimpliSafe has contributed to the direct infringement of the '055 patent by their personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '055 patent, including, for example, claim 1.   The special features constitute a material part of the invention of one or more of the claims of the '055 patent and are not staple articles of commerce suitable for substantial non-infringing use.   SimpliSafe's contributory infringement is ongoing.   *See* **Ex. S—Ex. V**.

105.     SimpliSafe had knowledge of the '055 patent at least as of the date when they were notified of the filing of this action.

106.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

107.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

108.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '055 patent.

109.     IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

110.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '055 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 6,801,933

111.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

112.     The USPTO duly issued U.S. Patent No. 6,801,933 (hereinafter, the "'933 patent") on October 5, 2004, after full and fair examination of Application No. 09/644,054 which was filed on August 23, 2000.  *See* **Ex. G**.

113.     IoT Innovations owns all substantial rights, interest, and title in and to the '933 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

114.     The claims of the '933 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information

repositories and retrieving relevant results using queries and results built from natural language.

115.   The written description of the '933 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

116.   SimpliSafe has directly infringed one or more claims of the '933 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

117.   SimpliSafe has directly infringed, either literally or under the doctrine of equivalents, at least claim 7 of the '933 patent.

118.   For example, SimpliSafe, using the Accused Products, including but not limited to the SimpliCam Indoor Camera, performs a method, comprising receiving a request for data; producing a current state based on the request; determining a next state based on the current state; caching data based on the current state and the next state; and associating the request with a user of an application having a plurality of states, wherein the user is located in one of the plurality of states. *See, e.g.*, **Ex. U**.

119.   More specifically, and as just one example of infringement, SimpliSafe performs a method, comprising receiving a request for data [*e.g.,* SimpliSafe receives a request to add a device to the SimpliSafe home security system, such as the SimpliCam Indoor Camera using the SimpliSafe app]; producing a current state based on the request [*e.g.*, a state of searching for a new device, including any information associated with the device]; determining a next state based on the current state [*e.g.,* determines a next state, including for example adding a device by selecting "Set up a Camera"]; caching data based on the current state and the next state [*e.g.,* caching data

based on the data received from the QR code in which SimpliSafe gathers information about a device, and then adding information about the device to a user's account]; and associating the request with a user of an application having a plurality of states, wherein the user is located in one of the plurality of states [*e.g.,* SimpliSafe associates the request to add a device with a user of the SimpliSafe App].



Available at https://support.simplisafe.com/articles/simplicam/simplicam-indoor-camera-installation-guide/634492a8d9a8b404da76cccc?lang=en_US



Available at https://support.simplisafe.com/articles/simplicam/simplicam-indoor-camera-installation-guide/634492a8d9a8b404da76cccc?lang=en_US

120.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '933 patent.

121.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,379,464

122.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

123.    The USPTO duly issued U.S. Patent No. 7,379,464 (hereinafter, the "'464 patent") on

May 27, 2008, after full and fair examination of Application No. 10/306,504 which was filed on November 27, 2002.  *See* **Ex. H**.

124.    IoT Innovations owns all substantial rights, interest, and title in and to the '464 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

125.    The claims of the '464 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

126.    The written description of the '464 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

127.    SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '464 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '464 patent.

128.    As an example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe Alarm System, the Keypad, Base Station, and SimpliSafe Sensors, and SimpliSafe and Doorbells, performs a method, comprising selecting a user's communications device from a plurality of communications devices to communicate data between a personal digital gateway and the selected communications device, the data associated with a common user of the personal digital

gateway and of the selected communications device; storing profiles for each of the user's communications devices; retrieving a profile associated with the selected communications device; interpreting the data according to a rule-based engine to categorize the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; processing the data according to an edge side assembler; and  communicating the data and the profile to the selected communications device.  *See, e.g.*, **Ex. S** and **Ex. U**.

129.    For example, installation and use of the SimpliSafe Alarm System each rely on and utilize SimpliSafe's encryption technology to ensure that data communicated within or to the system constitutes an authorized use of the system in a manner that infringes at least claim 1 of the '464 patent.  *See, e.g.*, **Ex. W**.

130.    More specifically, and as just one example of infringement, SimpliSafe performs a method, comprising selecting a user's communications device [*e.g.,* SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe Keypads, *etc.*] from a plurality of communications devices to communicate data between a personal digital gateway [*e.g., the* SimpliSafe base station] and the selected communications device, the data associated with a common user of the personal digital gateway and of the selected communications device [*e.g., the* SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe Keypads, *etc.* are associated with a common user (*e.g.,* user enters a code/pin at the base station to add/modify SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, Thermostats, etc.]; storing profiles for each of the user's communications devices [*e.g.,* the base station stores a profile (*e.g.*, device ID, type, location, name, capabilities, etc.) for each of the user's communication devices]; retrieving a profile associated with the selected communications device [*e.g.,* the base station

retrieves a profile associated with a sensor when the base station communicates with the sensor (*e.g.,* to turn a system on/off, change a status, get status, etc.)]; interpreting the data according to a rule-based engine to categorize the data as at least one of (1) data associated with an access agent [*e.g.,* personal profiles], (2) data associated with a configuration agent [*e.g.,* data is communicated between the base station and sensor when adding the sensor to "bind" or "pair" the sensor to the base station], (3) data associated with a security agent [*e.g.*, authentication and security credentials (*e.g.,* usernames and passwords)], and (4) data associated with a management agent [*e.g.,* data is communicated between the base station and sensor when activating/deactivating, modifying, etc. the sensor (*e.g.,* stopping, starting, or changing a state or monitoring of the same)]; processing the data according to an edge side assembler [*e.g.,* the base stations communicate with sensors *via* cellular and/or Wi-Fi and an edge side assembler packetizes/depacketizes data to/from the sensor according to the cellular and/or Wi-Fi protocol]; and communicating the data and the profile to the selected communications device [*e.g.,* the base stations communicate the data (*e.g.,* exchange identification data during adding/pairing, an action to take such as turning on/off a system, etc.) and the profile (*e.g.,* home ID, device ID, frame control parameters, etc.) to the selected communication device].



Available at https://support.simplisafe.com/articles/using-your-system/how-do-i-add-new-sensors-to-my-existing-simplisafe-system/634492e38e3e4c348d43ee64?lang=en_US



Available at https://support.simplisafe.com/articles/original-simplisafe/how-do-i-add-new-sensors-to-my-original-simplisafe-system/63448138d9a8b404da76cc47?lang=en_US

131.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '464 patent.

132.    Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed and continues to indirectly infringe one or more claims of the '464 patent by inducing others to directly infringe said claims. SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '464 patent by providing or requiring use of the Accused Products. SimpliSafe has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '464 patent, including, for example, claim 1. Such steps by SimpliSafe included, among other things, advising or directing personnel,

contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '464 patent and with the knowledge that the induced acts constitute infringement.  SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '464 patent.  SimpliSafe's inducement is ongoing.  *See, e.g.*, **Ex. S—Ex. V**.

133.     SimpliSafe has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '464 patent.  SimpliSafe has contributed to the direct infringement of the '464 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '464 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '464 patent and are not staple articles of commerce suitable for substantial non-infringing use.  SimpliSafe's contributory infringement is ongoing.  *See, e.g.*, **Ex. S—Ex. V**.

134.     SimpliSafe had knowledge of the '464 patent at least as of the date when it was notified of the filing of this action.

135.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

136.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

137.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

138.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '464 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IX: INFRINGEMENT OF U.S. PATENT NO. 7,756,073

139.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

140.    The USPTO duly issued U.S. Patent No. 7,756,073 (hereinafter, the "'073 patent") on July 13, 2010, after full and fair examination of Application No. 10/247,567 which was filed on September 20, 2002.  *See* **Ex. I**.

141.    IoT Innovations owns all substantial rights, interest, and title in and to the '073 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

142.    The claims of the '073 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information

repositories and retrieving relevant results using queries and results built from natural language.

143.    The written description of the '073 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

144.    SimpliSafe has directly infringed and continues to directly one or more claims of the '073 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

145.    SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '073 patent.

146.    For example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe Alarm System, SimpliSafe Account, the Keypad, Base Station, and SimpliSafe Sensors, and SimpliSafe Cameras and Doorbells, performs a method comprising requesting a routing entry update, by a first node of a network, to a second node of the network, wherein said update request includes an identification of the update request; submitting request verification information, associated with said identification of the update request, from said first node to at least one routing node of the network; transmitting a request for verification of said routing entry update from said second node to said routing node using said identification of the update request; and retrieving said request verification information from said routing node based on said identification of the update request. *See, e.g.*, **Ex. V**; **Ex. S**.

147.    For example, installation and use of the SimpliSafe Alarm System utilizes 2-step verification, multi-factor verification, and/or biometric verification in a manner that infringes at

least claim 1 of the '073 patent.  *See, e.g.*, **Ex. W**.  More specifically, and as just one example of infringement, SimpliSafe performs a method comprising requesting a routing entry update [*e.g.,* as part of using the SimpliSafe app, adding a telephone number or other unique identification for subsequent routing of messages], by a first node of a network [*e.g.,* SimpliSafe servers], to a second node of the network [*e.g.,* SimpliSafe app installed on mobile phone], wherein said update request includes an identification of the update request [*e.g.,* telephone number or other unique identification used for authentication]; submitting request verification information, associated with said identification of the update request [*e.g.,* the recipient telephone number or other unique identification], from said first node to at least one routing node of the network [*e.g.,* the mobile network for the mobile phone is an example of the routing node]; transmitting a request for verification of said routing entry update from said second node to said routing node using said identification of the update request [*e.g.,* SimpliSafe app installed on mobile phone will transmit a verification request to the mobile network]; and retrieving said request verification information from said routing node based on said identification of the update request [*e.g.,* SimpliSafe servers will retrieve a verification request from the mobile network, including information previously transmitted by the mobile phone].



Product Support    Getting Started    Using Your System    Account & Billing    Community        🔍 Search Support

🏠 App Support  >  Securing Your SimpliSafe Ac...

# Securing Your SimpliSafe Account

Updated 26 days ago

At SimpliSafe, we take protecting your information as seriously as we do protecting your home. To help us keep you protected, we've implemented Account Verification with 2-Step Verification and Multi-Factor Authentication (MFA) for all new accounts. This means that any time you log into your account with a new device, or renew your login on the same device, you'll need to confirm that login through a different point of contact. So even if someone knew your email and SimpliSafe password, they still wouldn't be able to access your account without your permission.

## Using 2-Step Verification

2-Step Verification is required for your SimpliSafe account and is enabled when you first set it up. When you log in to a device with your SimpliSafe username and password, you'll receive an email. To confirm the login, you need to open that email and click the Verify Device button.

2-step Verification is set up for the email address we have for your account. To change your email, you will need to log into your account on a web browser.

1. Log into your account here.
2. On the menu on the left (you may need to click the ≡ three-bar menu icon), click Manage Account
3. Under Login Info, you will find the box where you can change your email address
4. Don't forget to Save Changes on the bottom

## Enabling Multi-Factor Authentication (MFA)

Multi-Factor Authentication (MFA) allows you to confirm access to your SimpliSafe account through a registered phone number. You can register multiple phone numbers to authenticate your SimpliSafe account for use on different devices.

Note: Enabling MFA will replace 2-Step Verification.

To enable Multi-Factor Authentication:

1. Open the SimpliSafe app on a device that is already logged in
2. Navigate to the ≡ three-bar menu on the top left corner of the app
3. Select Manage Account
4. Then choose Multi-Factor Authentication
5. You'll be asked to log in again
    1. If you have not set up MFA yet, you'll need to verify your login by 2-step verification
6. Select Phone as the authentication method, and tap Continue
7. Enter a phone number where you would like to send notifications
    1. Note: At this time, only US and UK phone numbers are supported
8. Select how you would like to verify your phone number: either Text Message (SMS) or phone call
9. *You'll receive a 6-digit code. Type that code into the box in the SimpliSafe app, and tap Continue
10. From here, you can tap + Add Authentication Method to add more contact numbers or tap Done if you're finished.

You can follow the above instructions to return to the Multi-Factor Authentication screen, and add more contact numbers at any time.

When it's time to log into your SimpliSafe account, either on the SimpliSafe app or your online account:

1. Type in your username and password, and tap Continue
2. A verification code will automatically be sent to the first contact. If that is your number, skip to step 5.
3. To select a different contact to receive the code, hit the > on the right of the phone number
4. Select the phone number you wish to receive the confirmation code. Once selected, the confirmation will be sent automatically
5. Type in the confirmation code that you received via SMS or phone call, and press Continue
6. You will now be logged into your SimpliSafe account

*Please Note: MFA Confirmation Codes can only be sent to US and UK phone numbers. If you are traveling internationally, we strongly suggest logging out and logging back in to the SimpliSafe app prior to your departure. This will keep you logged in to the app for 30 days.

## Enabling Biometric Authentication

When logging into the SimpliSafe mobile app, you may be prompted to set up Biometric Authentication. In order to be eligible for this feature you will need to have an iOS device that supports Face ID or Touch ID, or an Android device that supports Face Unlock or Fingerprint.

Once Biometric Authentication is configured, you'll only need to enter your email address and use Biometric Authentication to log in on this device. For other devices or when using the Web App, you will still need to enter your password and may be prompted for 2FA or MFA authentication.

You can manage Biometric Authentication at any time on the SimpliSafe app.

1. Select the three-bar menu from the top left corner of the app
2. Choose Manage Account
3. Next, choose Multi-factor Authentication
4. Then, you will be brought to the screen to manage your Multi-Factor Authentication log-in options - including Biometric Authentication.

Available at https://support.simplisafe.com/articles/app-support/securing-your-simplisafe-account/6359944e267591200c56fd61?lang=en_US

148.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '073 patent.

149.     Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed and continues to indirectly infringe one or more claims of the '073 patent by inducing others to directly infringe said claims.  SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '073 patent by providing or requiring use of the Accused Products.  SimpliSafe has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '073 patent, including, for example, claim 1.  Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '073 patent and with the knowledge that the induced acts constitute infringement.  SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '073 patent.  SimpliSafe's inducement is ongoing.  *See, e.g.*, **Ex. S—Ex. V**.

150.     SimpliSafe has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '073 patent.  SimpliSafe has contributed to the direct

infringement of the '073 patent by its personnel, contractors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '073 patent, including, for example, claim 1.   The special features constitute a material part of the invention of one or more of the claims of the '073 patent and are not staple articles of commerce suitable for substantial non-infringing use.   SimpliSafe's contributory infringement is ongoing.   *See, e.g.*, **Ex. S—Ex. V**.

151.     SimpliSafe had knowledge of the '073 patent at least as of the date when it was notified of the filing of this action.

152.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

153.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

154.     IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.   Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

155.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.   IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '073 patent.   SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.   The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and

technology.   The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT X: INFRINGEMENT OF U.S. PATENT NO. 7,394,798

156.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

157.     The USPTO duly issued U.S. Patent No. 7,394,798 (hereinafter, the "'798 patent") on July 1, 2008, after full and fair examination of Application No. 10/962,694 which was filed on October 13, 2004.  *See* **Ex. J**.

158.     IoT Innovations owns all substantial rights, interest, and title in and to the '798 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

159.     The claims of the '798 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

160.     The written description of the '798 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

161.     SimpliSafe has directly infringed and continues to indirectly infringe one or more claims of the '798 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues

to directly infringe, either literally or under the doctrine of equivalents, at least claim 30 of the '798 patent.

162.    As an example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe Doorbell Pro, provides a network control node, comprising means for establishing a connection between two groups of network nodes, wherein each group of network nodes is formed temporarily and comprises at least two network nodes, a connection between the network control node and at least one network node is established via a mobile communication network, and the connection within each group is provided as a direct contact via a radio connection between at least two network nodes of the group, wherein the radio connection is a half-duplex radio connection.

163.    More specifically, and as just one example of infringement, SimpliSafe provides a network control node [*e.g.,* SimpliSafe app], comprising means for establishing a connection between two groups [*e.g.,* domains] of network nodes [*e.g.,* the SimpliSafe app establishes a Wi-Fi or cellular connection with two groups of devices (*e.g.,* SimpliSafe SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, and SimpliSafe Thermostats, etc.)], wherein each group of network nodes is formed temporarily and comprises at least two network nodes [*e.g.,* SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, and SimpliSafe Thermostats, etc.], a connection between the network control node and at least one network node is established via a mobile communication network [*e.g.,* the SimpliSafe app connects to the Doorbell Pro via the mobile phone's cellular and/or Wi-Fi connection], and the connection within each group is provided as a direct contact via a radio connection between at least two network nodes of the group, wherein the radio connection is a half-duplex radio connection [*e.g.,* the SimpliSafe app connected to the Doorbell Pro will not produce audio while holding down the microphone button].

 

## Meet Doorbell Pro

Take a

162° Field of View

Smart motion detection

2-way Audio

SimpliSafe

**All features**

HDR Imaging

1080p HD

Infrared Night Vision

2-way Audio

Motion Alerts

Pan and Zoom

162° Wide Angle Field of View

Door Chime

**Requirements**

Wifi connection (2.4GHz)

Existing wired doorbell setup

Mechanical chime

Available at https://simplisafe.com/video-doorbell-pro

---

How do you use the Video Doorbell Pro's two-way audio? ⌃

By downloading the SimpliSafe app, not only can you access your doorbell camera in real time, but also the speaker. The two-way audio feature on our Video Doorbell allows users to talk to anyone who might be outside of their property. Customers can then communicate with anyone standing next to their doorbell without having to open the front door.

Here's how to use it:

- To speak, hold down the microphone button while viewing the livestream
- To listen, release the microphone button to hear audio from the camera

**You will not be able to hear** the audio while holding down the microphone button

---

Available at https://simplisafe.com/video-doorbell-pro

Does the Video Doorbell have two-way talk?

**Yes.** With two-way audio, you can say hello to your local mail carrier or alert unwanted guests that they're not going unnoticed - even when you're not at home.

Available at https://simplisafe.com/video-doorbell-pro

164.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '798 patent.

165.    Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed and continues to indirectly infringe one or more claims of

the '798 patent by inducing others to directly infringe said claims. SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '798 patent by providing or requiring use of the Accused Products. SimpliSafe has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '798 patent, including, for example, claim 30. Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '798 patent and with the knowledge that the induced acts constitute infringement. SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '798 patent. SimpliSafe's inducement is ongoing. *See, e.g.*, **Ex. S—Ex. V**.

166.     SimpliSafe has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '798 patent. SimpliSafe has contributed to the direct infringement of the '798 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '798 patent, including, for example, claim 30. The special features constitute a material part of the invention of one or more of the claims of the '798 patent and are not staple articles of commerce suitable for substantial non-infringing use. SimpliSafe's contributory infringement is ongoing. *See, e.g.*, **Ex. S—Ex. V**.

167.     SimpliSafe had knowledge of the '798 patent at least as of the date when it was notified of the filing of this action.

168.     Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

169.     SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

170.     IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

171.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '798 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT XI: INFRINGEMENT OF U.S. PATENT NO. 7,593,428

172.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

173.     The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed

on January 9, 2007.  *See* **Ex. K**.

174.    IoT Innovations owns all substantial rights, interest, and title in and to the ' 428 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

175.    The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

176.    The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

177.    SimpliSafe has directly infringed one or more claims of the '428 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

178.    SimpliSafe has directly infringed, either literally or under the doctrine of equivalents, at least claim 14 of the '428 patent.

179.    For example, SimpliSafe, using the Accused Products, including but not limited to SimpliSafe's Indoor Camera and its associated hardware and software, performs a method comprising receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first

portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation. *See, e.g.*, **Ex. U**.

180.     More specifically, and as just one example of infringement, SimpliSafe performs a method comprising receiving data from a data source at a transceiver station [*e.g.,* SimpliSafe's WiFi equipped SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe Keypads, *etc.* includes a data source (*e.g.,* a memory containing video data and identification data) that receives data]; and in response to programmed instructions in processing circuitry at the transceiver station [*e.g.,* SimpliSafe's WiFi equipped SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe Keypads, *etc.* include programmed instructions in processing circuitry (*e.g.,* a Wi-Fi chipset supporting 802.11)]; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum [*e.g.,* SimpliSafe's WiFi equipped Indoor SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe Keypads, *etc.* select a first portion of the data (*e.g.,* a MAC Header and Frame Body of a first frame) to be protected by a first checksum (*e.g.,* Frame Check Sequence of the first frame) and selects a second portion of the data (*e.g.,* a MAC Header and Frame Body of a second frame) to be protected by a second checksum (*e.g.,* a Frame Check sequence of the second frame)]; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion [*e.g.,* SimpliSafe's WiFi equipped SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Thermostats, SimpliSafe

Keypads, *etc.* circuitry performs a first checksum calculation upon the selected first portion (*e.g.,* to generate a 32-bit CRC for the FCS field in the first frame) and performs at least a second checksum calculation upon the selected second portion (*e.g.,* to generate a 32-bit CRC for the FCS field in the second frame)]; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation [*e.g.,* the circuitry formats the data into a packet-formatted data packet (*e.g.,* an Aggregate Medium Access Control (MAC) Protocol Data Unit, or "A-MPDU"). The packet-formatted data packet comprises the selected first portion (*e.g.,* the MAC Header and Frame Body of the first frame/MPDU), indicia associated with the first checksum calculation (*e.g.,* the 32-bit CRC for the MAC Header and Frame Body for the first frame), the selected second portion (*e.g.,* the MAC Header and Frame Body of the second frame/MPDU), and indicia associated with the second checksum calculation (*e.g.,* the 32-bit CRC for the MAC Header and Frame Body for the second frame)].  *See, e.g.*, **Ex. S**.



Available at https://simplisafe.com/simplicam-security-camera

181.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

182.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT XII: INFRINGEMENT OF U.S. PATENT NO. 7,304,570

183.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

184.    The USPTO duly issued U.S. Patent No. 7,304,570 (hereinafter, the "'570 patent") on December 4, 2007, after full and fair examination of Application No. 11/200,611 which was filed

on August 10, 2005.  *See* **Ex. L**.  A Certificate of Correction was issued on November 4, 2008. *See id*, at p. 15.

185.    IoT Innovations owns all substantial rights, interest, and title in and to the '570 patent, including the sole and exclusive right to prosecute this action and enforce the '570 patent against infringers and to collect damages for all relevant times.

186.    The claims of the '570 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of context-based, hierarchical security for a mobile device.

187.    The written description of the '570 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

188.    SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '570 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '570 patent.

189.    As an example, SimpliSafe, using the Accused Products performs a method for providing context-based, hierarchical security for a mobile device, the method comprising storing a hierarchy of security actions for at least one of protecting data stored on a mobile device and preventing unauthorized use of the mobile device, the hierarchy including a plurality of security levels, each security level including at least one context-based security action; performing at least

one security action associated with a first security level in response to the existence of a first context associated with the first security level; and performing at least one security action associated with a second security level in response to the existence of a second context associated with the second security level. *See, e.g.*, **Ex. X**, at p. 2.

190.     More specifically, and as just one example of infringement, SimpliSafe, by using and causing to be used on the SimpliSafe Keypad personal identification number ("PINs"), performs a method for providing context-based [*e.g.,* arm/disarming or lock/unlock], hierarchical security [*e.g.,* different PIN types (*e.g.,* Master, Custom, Duress)] for a mobile device [*e.g.,* a smartphone], the method comprising storing a hierarchy of security actions for at least one of protecting data stored on a mobile device [*e.g.,* security system information on the SimpliSafe app] and preventing unauthorized use of the mobile device [*e.g.,* to prevent modifications to security system settings on the SimpliSafe app], the hierarchy [*e.g.,* different PIN types] including a plurality of security levels [*e.g.,* Master, Custom, Duress], each security level including at least one context-based security action [*e.g.,* Duress PINs can be used in emergency situations to immediately dispatch police to your location]; performing at least one security action [*e.g.,* disarming security system] associated with a first security level [*e.g.,* Custom PIN] in response to the existence of a first context [*e.g.,* a guest accessing location] associated with the first security level; and performing at least one security action [*e.g.,* dispatching law enforcement to your location] associated with a second security level [*e.g.,* Duress PIN] in response to the existence of a second context [*e.g.,* emergency situation] associated with the second security level.

## What are PINs?

PINs are the four-digit sequences used to arm and disarm your system, as well as to lock and unlock the Smart Lock. When setting up your system, you will be prompted to create a Master PIN. However, you have the option to create additional Custom and Duress PINs.

When you set up Custom PINs, you'll be able to delegate access to your location, without allowing an individual to make changes to your SimpliSafe system. You'll also be able to see which PIN was used to arm or disarm your system in the timeline on the Mobile App or Web app.

Duress PINs can be used in emergency situations to immediately dispatch police to your location.

**Please note that PINs are different from your Safe Word.** Your Safe Word will be needed to make changes to your monitoring subscriptions and to verify or cancel an alarm event when you're on the phone with our team of experts.

## Setting up PINs

There are three types of PINs in our latest SimpliSafe: Master, Custom, and Duress. **The Smart Lock uses the exact same PINs as the Keypad.** There are two ways to change or add PINs.

Available at https://support.simplisafe.com/articles/account-billing/setting-up-a-new-pin/6344780ceb3c8e382dd025d1

## PIN Types

| PIN Type | Use |
|---|---|
| Master PIN | Allows disarming your system. The Master PIN is also required in order to access the Keypad's menu. |
| Custom PIN | Custom PINs are similar to the Master PIN, but cannot access the menu to change system settings. Give these to friends and family to let them disarm your system. Naming them allows you to keep track of who is disarming your system. These can be added and deleted as needed. |
| Duress PIN | Emergency PIN used to instantly notify emergency responders that you are under duress. When this PIN is entered on the Keypad, we'll dispatch the police immediately (and disarm the system to fool intruders). |

Available at https://support.simplisafe.com/articles/account-billing/setting-up-a-new-pin/6344780ceb3c8e382dd025d1

191.    Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed and continues to indirectly infringe the '570 patent by inducing others to directly infringe the '570 patent. SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '570 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with

others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '570 patent, including, for example, claim 1 of the '570 patent. Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '570 patent and with the knowledge that the induced acts constitute infringement. SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '570 patent. SimpliSafe's inducement is ongoing. *See, e.g.*, **Ex. S—Ex. V**.

192.    SimpliSafe has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '570 patent. SimpliSafe has contributed to the direct infringement of the '570 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '570 patent, including, for example, claim 1 of the '570 patent. The special features constitute a material part of the invention of one or more of the claims of the '570 patent and are not staple articles of commerce suitable for substantial non-infringing use. SimpliSafe's contributory infringement is ongoing. *See, e.g.*, **Ex. S—Ex. V**.

193.    SimpliSafe had knowledge of the '570 patent at least as of the date when it was notified of the filing of this action.

194.    Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of

others, and thus have been willfully blind of IoT Innovations' patent rights.

195.   SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

196.   SimpliSafe's direct infringement of one or more claims of the '570 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

197.   IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '570 patent.

198.   IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above.  Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

199.   IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '570 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT XIII: INFRINGEMENT OF U.S. PATENT NO. 6,920,486

200.   IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

201.    The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 6,920,486 (the "'486 patent") on July 19, 2005, after full and fair examination of Application No. 10/153,170, which was filed on May 20, 2002.  *See* **Ex. M**.

202.    IoT Innovations owns all substantial rights, interest, and title in and to the '486 patent, including the sole and exclusive right to prosecute this action and enforce the '486 patent against infringers and to collect damages for all relevant times.

203.    The claims of the '486 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of synchronizing data stores on different devices having data stores that differ in respect to one or more data components.

204.    The written description of the '486 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

205.    SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '486 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '486 patent.

206.    As an example, SimpliSafe, using the Accused Products, including but not limited to SimpliSafe's Base Station, Keypad(s), Mobile App, SimpliSafe Servers, SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, and a SimpliCam Subscription and associated hardware and software, performs a method by which a first client data store hosted by a first client device is

synchronized with respect to a second client data store hosted by a second client device by synchronizing the two client data stores with respect to a server data store hosted by a server device, the server having an established connection with the client devices, the two client data stores each including various data fields, the method characterized by: forming structure information indicative of the structure of the two client data stores in respect to at least one data field of the first client data store, for which the second client data store does not have either one corresponding data field or does not have two or more data fields that in combination correspond to the at least one data field; detecting by the server or the first client device a use of the at least one data field in the first client data store; and setting a correspondence of the at least one data field in the first client data store in respect to the second client data store, in order for the at least one data field in the first client data store to be used by the second client.

207.    More specifically, and as just one example of infringement, SimpliSafe performs a method by which a first client data store hosted by a first client device [*e.g.,* a list of devices at the the SimpliSafe Base Station] is synchronized with respect to a second client data store hosted by a second client device [*e.g.,* a SimpliSafe Keypad or SimpliSafe app on a mobile phone] by synchronizing the two client data stores with respect to a server data store hosted by a server device [*e.g.,* the SimpliSafe Mobile app shows that the data stored in the Base Station and Keypad and/or Mobile App are synchronized with the datastore on SimpliSafe's servers like bb2.simplisafe.com], the server having an established connection with the client devices [*e.g.*, through a wireless connection], the two client data stores each including various data fields, the method characterized by: forming structure information indicative of the structure of the two client data stores in respect to at least one data field of the first client data store, for which the second client data store does not have either one corresponding data field or does not have two or more data fields that in

combination correspond to the at least one data field [*e.g.,* the Base Station includes one or more data fields for adding one or more SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Keypads, *etc.* to a SimpliSafe security system and SimpliSafe forms structure information indicative of the one or more sensors added via the Base Station so that such one or more sensors may be viewed via the SimpliSafe app]; detecting by the server or the first client device [*e.g.,* the SimpliSafe Base station] a use of the at least one data field in the first client data store [*e.g.,* data associated with SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Keypads, *etc.*]; and setting a correspondence of the at least one data field in the first client data store in respect to the second client data store, in order for the at least one data field in the first client data store to be used by the second client [*e.g.,* SimpliSafe sets a correspondence between the one or more data fields in the Base Station for adding SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Keypads, *etc.*, including to allow viewing and/or control of the one or more SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Keypads, added the system].



Available at https://play.google.com/store/apps/details?id=com.simplisafe.
Mobile&hl=en_US&gl=US

208.    Since at least the time of receiving the relevant original complaint(s) in this action,
SimpliSafe has additionally indirectly infringed the '486 patent by inducing others to directly
infringe the '486 patent. SimpliSafe has induced end-users, including, but not limited to,
SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the
doctrine of equivalents, the '486 patent by providing or requiring use of the Accused Products.
SimpliSafe took active steps, directly or through contractual relationships with others, with the
specific intent to cause them to use the Accused Products in a manner that infringes one or more
claims of the '486 patent, including, for example, claim 1 of the '486 patent. Such steps by
SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users
to use the Accused Products in an infringing manner; advertising and promoting the use of the
Accused Products in an infringing manner; or distributing instructions that guide users to use the
Accused Products in an infringing manner. SimpliSafe is performing these steps, which constitute
induced infringement with the knowledge of the '486 patent and with the knowledge that the
induced acts constitute infringement. SimpliSafe is aware that the normal and customary use of
the Accused Products by others would infringe the '486 patent. SimpliSafe's inducement is
ongoing. *See* **Ex. S—Ex. V**.

209.    Since at least the time of receiving the relevant original complaint(s) in this action,
SimpliSafe has also indirectly infringed by contributing to the infringement of the '486 patent.
SimpliSafe has contributed to the direct infringement of the '486 patent by their personnel,
contractors, and customers. The Accused Products have special features that are specially designed
to be used in an infringing way and that have no substantial uses other than ones that infringe one

or more claims of the '486 patent, including, for example, claim 1 of the '486 patent. The special features constitute a material part of the invention of one or more of the claims of the '486 patent and are not staple articles of commerce suitable for substantial non-infringing use. SimpliSafe's contributory infringement is ongoing. *See* **Ex. S—Ex. V.**

210.    SimpliSafe had knowledge of the '486 patent at least as of the date when it was notified of the filing of this action.

211.    Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

212.    SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

213.    SimpliSafe's direct infringement of one or more claims of the '486 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

214.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '486 patent.

215.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above. Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

216.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to

suffer this harm by virtue of SimpliSafe's infringement of the '486 patent. SimpliSafe's actions have interfered with and will interfere with IoT's ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT XIV: INFRINGEMENT OF U.S. PATENT NO. 7,567,580

217.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

218.    The USPTO duly issued U.S. Patent No. 7,567,580 (hereinafter, the "'580 patent") on July 28, 2009 after full and fair examination of Application No. 11/787,977 which was filed on April 18, 2007. *See* **Ex. N**.

219.    IoT Innovations owns all substantial rights, interest, and title in and to the '580 patent, including the sole and exclusive right to prosecute this action and enforce the '580 patent against infringers and to collect damages for all relevant times.

220.    The claims of the '580 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of methods and systems for a personal digital gateway.

221.    The written description of the '580 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

222. SimpliSafe has directly infringed one or more claims of the '580 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

223. SimpliSafe has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '580 patent.

224. For example, SimpliSafe, using the Accused Products, including but not limited to SimpliSafe's Base Station, Keypad(s), Mobile App, SimpliSafe Servers, SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, and a SimpliCam Subscription, and associated hardware and software, performs a method, comprising: identifying data associated with a common user of a personal digital gateway and of a communications device selected from a plurality of communications devices; locating remote data stored the selected communications device; querying to retrieve the remote data; integrating the data and the remote data; formatting the integrated data according to a presentation format associated with the selected communications device; and communicating the formatted, integrated data to at least one of the plurality of communications devices.

225. More specifically, and as just one example of infringement, SimpliSafe performs a method, comprising: identifying data [*e.g.,* "Camera 00a5b …" and "Front Door"] associated with a common user of a personal digital gateway [*e.g.,* a SimpliSafe Base station] and of a communications device [*e.g.,* a SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Keypads, ] selected from a plurality of communications devices [*e.g.,* a mobile phone with the SimpliSafe Mobile App and SimpliSafe Sensors, SimpliSafe Cameras and Doorbells, SimpliSafe Keypads]; locating remote data stored the selected communications device [*e.g.,* video stored by the Video Doorbell Pro are examples of remote data stored, which will be located for subsequent viewing on the SimpliSafe Mobile App]; querying to retrieve the remote data [*e.g.,*

selecting a picture to retrieve a video segment stored on the SimpliSafe Video Doorbell Pro]; integrating the data and the remote data [*e.g.*, in order to download the clip, the data (*e.g.*, "Front Door" or "Camera 00a5b") and the remote data (*e.g.*, video segment from a specific time) are integrated]; formatting the integrated data [*e.g.*, camera name and video segment from a specific time] according to a presentation format associated with the selected communications device [*e.g.*, displaying video using a video codec with HD 1080p]; and communicating the formatted, integrated data [*e.g.*, the full 1:05 of formatted, integrated data in the form of the video clip] to at least one of the plurality of communications devices [*e.g.*, a mobile phone].



Available at https://www.safehome.org/security-systems/simplisafe/doorbell/



Available at https://www.safehome.org/security-systems/simplisafe/doorbell/

226.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '580 patent.

227.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above. Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT XV: INFRINGEMENT OF U.S. PATENT NO. RE44,742

228.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

229.    The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012.  *See* **Ex. O**.

230.    IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce the '742 patent against infringers and to collect damages for all relevant times.

231.    The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template based messaging systems.

232.    The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

233.    SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '742 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 22 of the '742 patent.

234.    As an example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe's Base Station and Keypad(s), Mobile App, and Servers, and associated hardware and software, performs a method comprising determining, by a processing device, a message to be generated from a message template; automatically populating, by the processing device, a dynamic

field of the message template with message context data in response to the determination; and sending, by the processing device, the message having the message context data in the dynamic field of the message template to a remote device.



235.   More specifically, and as just one example of infringement, SimpliSafe performs a method comprising determining, by a processing device [*e.g.,* a server within the network for "simplisafe.com"], a message to be generated [*e.g.,* the options for email or SMS alerts] from a message template [*e.g.,* the options for receiving alerts for alarms, activity, and errors]; automatically populating, by the processing device, a dynamic field [*e.g.,* smoke detector name (*e.g.,* "Smoke", and time are automatically populated)] of the message template [*e.g.,* text messages shown below] with message context data in response to the determination [*e.g.,* for an alarm event, the processing device will perform the recited step]; and sending, by the processing device, the message having the message context data in the dynamic field of the message template

to a remote device [*e.g.,* a smartphone using the SimpliSafe Mobile App].





Available at https://support.simplisafe.com/articles/alarm-events-monitoring/what-are-alarm-texts-and-how-do-i-use-them/6344780c013ba90af0bce6a0

236.     Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has additionally indirectly infringed the '742 patent by inducing others to directly infringe the '742 patent. SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement. SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '742 patent. SimpliSafe's inducement is ongoing. *See* **Ex. S—Ex. V**.

237.     Since at least the time of receiving the relevant original complaint(s) in this action, SimpliSafe has also indirectly infringed by contributing to the infringement of the '742 patent. SimpliSafe has contributed to the direct infringement of the '742 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 22 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent

and are not staple articles of commerce suitable for substantial non-infringing use. SimpliSafe's contributory infringement is ongoing. *See* **Ex. S—Ex. V.**

238.    SimpliSafe had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

239.    Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

240.    SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

241.    SimpliSafe's direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

242.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

243.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above. Thus, SimpliSafe is liable to IoT in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

244.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '742 patent.  SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The

balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT XVI: INFRINGEMENT OF U.S. PATENT NO. 8,401,571

245.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

246.    The USPTO duly issued U.S. Patent No. 8,401,571 (hereinafter, the "'571 patent") on March 19, 2013 after full and fair examination of Application No. 10/534,012, which was filed on May 5, 2005, which claims priority to a PCT application November 5, 2002. *See* **Ex. P**. A Certificate of Correction was issued on March 11, 2014. *See id.*, at p. 11.

247.    IoT Innovations owns all substantial rights, interest, and title in and to the '571 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

248.    The claims of the '571 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the operation of previous mobile electronic devices and systems, and related system hardware and software, by using a posture of an apparatus to select a mode of orientation/presentation.

249.    The written description of the '571 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

250.     SimpliSafe has directly infringed and continues to directly infringe one or more claims of the '571 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, SimpliSafe has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '571 patent.

251.     As an example, as used and/or made available by the SimpliSafe, the Accused Products, including but not limited to SimpliSafe's Base Station, Keypad(s), Mobile App, SimpliSafe Servers, SimpliSafe's Cameras and Doorbells, and a SimpliCam Subscription, and associated hardware and software, comprise an apparatus with at least one processing component configured to process data indicative of the current posture of said apparatus for enabling a posture related presentation of information to a user *via* an output component, said processing including selecting one of at least two different modes of presentation depending on said current posture of said apparatus.

252.     More specifically, and as just one example of infringement, SimpliSafe uses and/or makes available an apparatus [*e.g.,* the Simplisafe Home Security App for viewing security camera video] comprising at least one processing component configured to process data indicative of the current posture of said apparatus [*e.g.,* the Simplisafe Home Security App will include a processing component configured to process data based on any changes during runtime (*e.g.,* screen orientation)]  for enabling a posture related presentation of information to a user *via* an output component [*e.g.,* displaying the video in portrait or landscape, depending on the phone's orientation], said processing including selecting one of at least two different modes of presentation depending on said current posture of said apparatus [*e.g.,* the SimpliSafe Home Security App includes this functionality].



Available at https://play.google.com/store/apps/details?id=com.simplisafe.mobile&hl=en_US&gl=US



Available at https://simplisafe.com/simplicam-security-camera; *see also* https://www.safehome.org/security-systems/simplisafe/doorbell/

253.    Since at least the time of receiving the relevant original complaint(s) in this action,

SimpliSafe has also indirectly infringed one or more claims of the '571 patent by inducing others to directly infringe said claims. SimpliSafe has induced end-users, including, but not limited to, SimpliSafe's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '571 patent by providing or requiring use of the Accused Products. SimpliSafe took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '571 patent, including, for example, claim 1 of the '571 patent. Such steps by SimpliSafe included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. SimpliSafe is performing these steps, which constitute induced infringement with the knowledge of the '571 patent and with the knowledge that the induced acts constitute infringement. SimpliSafe is aware that the normal and customary use of the Accused Products by others would infringe the '571 patent. SimpliSafe's inducement is ongoing.  *See* **Ex. S—Ex. V**.

254.    SimpliSafe has also indirectly infringed by contributing to the infringement of the '571 patent. SimpliSafe has contributed to the direct infringement of the '571 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '571 patent, including, for example, claim 1 of the '571 patent. The special features constitute a material part of the invention of one or more of the claims of the '571 patent and are not staple articles of commerce suitable for substantial non-infringing use. SimpliSafe's contributory infringement is ongoing.  *See* **Ex. S—Ex. V.**

255.    SimpliSafe had knowledge of the '571 patent at least as of the date when it was notified of the filing of this action.

256.    Furthermore, on information and belief, SimpliSafe has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

257.    SimpliSafe's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by SimpliSafe.

258.    SimpliSafe's direct infringement of one or more claims of the '571 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

259.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '571 patent.

260.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above. Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

261.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of SimpliSafe's infringement of the '571 patent. SimpliSafe's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude

outweighs other public interests, which supports injunctive relief in this case.

## COUNT XVII: INFRINGEMENT OF U.S. PATENT NO. 8,175,037

262.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

263.     The USPTO duly issued U.S. Patent No. 8,175,037 (hereinafter, the "'037 patent") on May 8, 2012 after full and fair examination of Application No. 12/575,129, which was filed on October 7, 2009, which claims priority to a continuation of application No. 10/247,567, filed on September 20, 2002. *See* **Ex. Q**.  A Certificate of Correction was issued on July 31, 2012. *See id.,* at p. 9.

264.     IoT Innovations owns all substantial rights, interest, and title in and to the '037 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

265.     The claims of the '037 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of transforming data through and by updating a routing entry securely within a network.

266.     The written description of the '037 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

267.     SimpliSafe has directly infringed one or more claims of the '037 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

268.     SimpliSafe has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '037 patent.

269.     For example, SimpliSafe, using the Accused Products, including but not limited to the SimpliSafe's multi-factor authentication as employed in its Base Station, Servers, and Mobile App, performs a method, comprising receiving, at a first communication node of a network, a request for a routing entry update from a second communication node of the network, wherein an update request includes an identification of the update request; verifying authenticity of the update request by transmitting a request for verification from the first communication node to the routing node associated with the second communication node, the request for verification including a random challenge and the identification of the update request; receiving, from the routing node, a verification response including information previously transmitted to the routing node by the second communication node, wherein the information previously transmitted comprises the identification of the update request; and updating a routing entry if the authenticity of the request is verified.

270.     More specifically, and as just one example of infringement, SimpliSafe performs a method, comprising receiving, at a first communication node of a network [*e.g.,* SimpliSafe servers], a request for a routing entry update from a second communication node of the network, wherein an update request includes an identification of the update request [*e.g.,* adding two factor authentication/MFA in the SimpliSafe mobile app, where the request for routing entry update specifies a telephone number or other unique identification for subsequent routing of messages for two-factor/MFA authentication]; verifying authenticity of the update request by transmitting a request for verification from the first communication node to the routing node associated with the second communication node, the request for verification including a random challenge and the

identification of the update request [*e.g.,* SimpliSafe servers will verify authenticity of update by transmitting a verification code, which is received by a recipient telephone number or other unique identification *via* the mobile phone's network (*e.g.,* Verizon)]; receiving, from the routing node, a verification response including information previously transmitted to the routing node by the second communication node, wherein the information previously transmitted comprises the identification of the update request [*e.g.,* SimpliSafe servers will receive a verification response from the mobile phone's network, and the verification response includes the information previously transmitted by the mobile phone (*e.g.,* the mobile telephone number or other unique identification)]; and updating a routing entry if the authenticity of the request is verified [*e.g.,* after successfully receiving the verification response, a routing entry is updated with the confirmed telephone number or other unique identification].



Available at https://support.simplisafe.com/articles/app-support/securing-your-simplisafe-account/6359944e267591200c56fd61?lang=en_US

271.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '037 patent.

272.    IoT Innovations has been damaged as a result of the infringing conduct by SimpliSafe alleged above. Thus, SimpliSafe is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

273.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

274.    IoT Innovations requests that the Court find in its favor and against SimpliSafe, and that the Court grant IoT Innovations the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by SimpliSafe or others acting in concert therewith;

b.    A permanent injunction enjoining SimpliSafe and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '876 patent, the '102 patent, the '762 patent, the '576 patent, the '055 patent, '464 patent, the '073 patent, the '798 patent, the '570 patent, the '486 patent, '742 patent, and '571 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that SimpliSafe accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of SimpliSafe's infringing activities and other conduct complained of herein;

d.   Judgment that SimpliSafe's infringements be found willful as to the '876 patent, the

'102 patent, the '762 patent, the '576 patent, the '055 patent, '464 patent, the '073

patent, the '798 patent, the '570 patent, the '486 patent, '742 patent, and '571 patent,

and that the Court award treble damages for the period of such willful infringement

pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by SimpliSafe's

infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award IoT Innovations its

reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the

circumstances.

Dated: <u>May 17, 2023</u>             Respectfully submitted,

By: <u>*/s/ James F. McDonough, III*</u>
David S. Godkin (BBO #196530)
James E. Kruzer (BBO #670827)
**BIRNBAUM & GODKIN, LLP**
1 Marina Park Drive, Suite 1410
Boston, Massachusetts 02210
Telephone: (617) 307-6100
Email: godkin@birnbaumgodkin.com
Email: kruzer@birnbaumgodkin.com

### *Attorneys for Plaintiff IOT INNOVATIONS LLC*

<u>Of Counsel</u>
James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)**
Travis E. Lynch (GA 162373)**
**ROZIER HARDT MCDONOUGH PLLC**
3621 Vinings Slope, Suite 4300
Atlanta, Georgia 30339
Telephone: (470) 480-9505, -9517, -9514
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
2590 Walnut Street, Suite 10
Denver, Colorado 80205
Telephone: (720) 820-3006
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

* Admission *pro hac vice* pending
**Admission *pro hac vice* anticipated

**List of Exhibits**

    A.  U.S. Patent No. 7,209,876
    B.  U.S. Patent No. 7,263,102
    C.  U.S. Patent No. 7,526,762
    D.  U.S. Patent No. 7,983,282
    E.  U.S. Patent No. 8,972,576
    F.  U.S. Patent No. 9,008,055
    G.  U.S. Patent No. 6,801,933
    H.  U.S. Patent No. 7,379,464
    I.  U.S. Patent No. 7,756,073
    J.  U.S. Patent No. 7,394,798
    K.  U.S. Patent No. 7,593,428
    L.  U.S. Patent No. 7,304,570
    M.  U.S. Patent No. 6,920,486
    N.  U.S. Patent No. 7,567,580
    O.  U.S. Patent No. RE44,742
    P.  U.S. Patent No. 8,401,571
    Q.  U.S. Patent No. 8,175,037
    R.  SimpliSafe Home Security Systems
    S.  SimpliSafe Home Security Packages
    T.  SimpliSafe Support
    U.  SimpliSafe Indoor Security Camera
    V.  SimpliSafe Help Center
    W.  SimpliSafe Alarm System
    X.  SimpliSafe Server

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true copy of the above document to be filed using this Court's ECF System which caused it to be served by electronic mail upon the attorneys of record.

Dated: <u>May 17, 2023</u>               Respectfully submitted,

                                 By: *<u>/s/ James F. McDonough, III</u>*
                                   James F. McDonough, III